**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 18, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff – Appellee,

v.

TRACY HARRIS,

      Defendant – Appellant.

No. 10-3173

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 6:07-CR-10143-JTM-2)**

Kurt P. Kerns of Ariagno, Kerns, Mank & White LLC, Wichita, Kansas, for Defendant-Appellant.

James A. Brown, Assistant United States Attorney (Barry R. Grissom, United States Attorney, with him on the brief), Topeka, Kansas, for Plaintiff-Appellee.

Before **LUCERO, SEYMOUR, and EBEL,** Circuit Judges.

**EBEL**, Circuit Judge.

Defendant-Appellant Tracy Harris ("Harris") was convicted under 18 U.S.C. § 1962(d) of conspiracy to commit a racketeering offense in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and sentenced to 188 months in prison. On appeal, he challenges the substantive correctness of the jury instructions on the elements of § 1962(d) conspiracy; the sufficiency of the evidence to convict him of that crime; the failure of the district court to issue a jury instruction on the affirmative defense of withdrawal; and the substantive and procedural reasonableness of his sentence.[1]

Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1), we hold (1) that the existence of an enterprise is not a required element of § 1962(d) conspiracy; (2) alternatively, even if the Government was required to prove the existence of an enterprise, there was sufficient evidence to show that the various gang sets in this case constituted an association-in-fact enterprise under Boyle v. United States, 556 U.S. 938 (2009); and (3) that Harris failed to present evidence that he had withdrawn from the alleged conspiracy sufficient to warrant a jury instruction on that defense. Further, under the concurrent-sentence doctrine, we decline to review Harris's challenge to his sentence. We therefore AFFIRM Harris's conviction and sentence.

---

[1] Harris was also convicted of one count being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and one count of wire fraud in violation of 18 U.S.C. § 1343. He was sentenced on those counts to 120 and 188 months' imprisonment, respectively, to run concurrently with his 188-month sentence for the RICO conspiracy charge. The firearm and wire fraud convictions and sentences are not at issue in this appeal.

## I.  BACKGROUND

The Crips are one of several street gangs active in Wichita, Kansas.  There are "sets" and "subsets" of the Crips in Wichita, including the Insane Crips, the Deuce Trey Crips, the Neighborhood Crips, and the Tre Five Seven Crips.  While these sets each have their own leaders, and often operate independently of each other, they share certain common features, such as wearing the color blue, showing the Crip sign, using the Crip handshake, and harboring animosity towards members of other gangs.  Crips socialize exclusively with other Crips, and members of different sets would meet regularly and would work together to make money.  This case arises out of the investigation, by the Wichita police, of the Crips gang and its criminal activity in Wichita, and the subsequent prosecution of several Crips in connection with that activity.

Harris was indicted, along with several co-defendants, in a thirty-eight-count indictment charging violations of RICO, as well as violations of federal weapons, drug, and wire fraud statutes.

Generally speaking, Harris was alleged to have been a major drug supplier involved in drug trafficking, who owned houses where drug trafficking took place. Harris personally was charged with one count of participating in an enterprise through a pattern of racketeering activity under 18 U.S.C. § 1962(c) (Count 1) (the "substantive RICO violation"), one count of conspiracy to commit a substantive RICO violation under 18 U.S.C. § 1962(d) (Count 2) ("RICO conspiracy"), one count of conspiracy to

3

distribute cocaine base (Count 3), one count of conspiracy to distribute marijuana (Count 4), one count of possession of a firearm by a felon (Count 17), two counts of possession of a firearm in furtherance of a drug trafficking crime (Counts 18 and 19), one count of possession with intent to distribute cocaine (Count 20), two counts of wire fraud (Counts 21 and 22), and two counts relating to intimidation of a witness (Counts 23 and 24).

Harris and his co-defendants, Clinton Knight and Chester Randall, were tried together in a two-week jury trial, after which the jury convicted Harris on Counts 2 (RICO conspiracy), 17 (felon-in-possession), and 21 (wire fraud). Harris was acquitted on Counts 1, 3, 19, and 20.[2] The Probation Officer prepared a Presentence Investigation Report ("PSR") that calculated Harris's offense level to be 44 and his criminal history category to be VI, resulting in an advisory guidelines range of life imprisonment.[3] Harris raised several objections to the PSR, upon which the district court ruled. The district court adopted the PSR without change, but ultimately concluded, after consideration of the sentencing factors of 18 U.S.C. § 3553(a), that a downward variance was appropriate. In particular, the district court was concerned about the disparities that would be created if Harris were sentenced to life. The district court reduced Harris's offense level to 31, resulting in an advisory guidelines range of 188-235 months' imprisonment, and

_____

[2] Counts 4, 18, 22, 23, and 24 were eventually dismissed on the Government's motion.

[3] The 2009 edition of the Federal Sentencing Guidelines Manual, effective November 1, 2009, governed Harris's June 2010 sentencing.

4

sentenced Harris at the bottom of that range: 188 months on Count 2, 120 months on Count 17, and 188 months on Count 21, all sentences to run concurrently.

Additional facts are set forth below as they become relevant to the discussion.

## II.    DISCUSSION

**A.    Jury instructions on elements of RICO conspiracy**

The first issue in this appeal is whether, to prove a conspiracy under 18 U.S.C. § 1962(d) to commit a substantive RICO violation under 18 U.S.C. § 1962(c), the Government must prove the existence of "an enterprise." The jury was instructed that it did not need to find the existence of an enterprise. Because Harris did not object to this jury instruction below, this Court reviews the district court's instruction for plain error. See United States v. Sturm, 673 F.3d 1274, 1281 (10th Cir. 2012). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (internal quotation marks omitted). "[A]n error is 'plain' if it is clear or obvious at the time of the appeal . . . ." Id. And an error affects substantial rights when the error "affected the outcome of the district court proceedings." Id. (internal quotation marks omitted). The burden is on Harris to show "a reasonable probability that, but for the error claimed, the

5

result of the proceeding would have been different." United States v. Fields, 516 F.3d

923, 944 (10th Cir. 2008) (internal quotation marks omitted).[4]

The district court instructed the jury on the elements of Count 2 as follows:

*First*: A conspiracy or agreement, as detailed in the indictment, existed between two or more persons to participate in the affairs of an enterprise that affected interstate commerce through a pattern of racketeering activity;

*Second*: that defendant deliberately joined or became a member of the conspiracy or agreement with knowledge of its purpose[;] and[]

---

[4] The Government urges that Harris's argument is entirely foreclosed by the "invited error doctrine," because Harris's counsel said he had no objection to the jury instruction when it was proposed at the jury instruction conference. Aple. Br. at 21-22. See United States v. DeBerry, 430 F.3d 1294, 1302 (10th Cir. 2005) (invited error precludes a party from arguing that the trial court erred in adopting a proposition that the party had urged the district court to adopt). The Government bases this argument on the ground that Harris said he had no objection to the challenged jury instruction when it was first proposed. The Government cites authority to support this proposition, see United States v. Griffin, 84 F.3d 912, 924 (7th Cir. 1996).

We do not consider Harris's counsel's statement at the jury instruction conference—at which the district court went individually through the jury instructions, confirming changes it was making, and asking each party whether it objected—to be sufficient to trigger the invited error doctrine. A defendant's failure to object to a district court's proposed jury instruction, or even the affirmative statement, "No, Your Honor," in response to the court's query "Any objection?", is not the same as a defendant who proffers his or her own instruction, persuades the court to adopt it, and then later seeks to attack the sufficiency of that instruction. See Sturm, 673 F.3d at 1281 (barring review under invited error doctrine where defendant proffered the very instruction under attack); United States v. Visinaiz, 428 F.3d 1300, 1310-11 (10th Cir. 2005) (same). Harris's objection was forfeited through neglect, not waived through knowing and voluntary relinquishment. See United States v. Zubia-Torres, 550 F.3d 1202, 1205 (10th Cir. 2008) ("[T]here must be some evidence that the waiver is knowing and voluntary, beyond counsel's rote statement that she is not objecting . . . ." (internal quotation marks omitted)).

*Third*: the defendant agreed that someone, not necessarily the defendant, would commit at least two of the racketeering acts detailed in the indictment.

ROA v.1 at 409 (Jury Instruction No. 24). In addition, the court instructed:

Unlike the charge in Count 1 [the substantive violation under § 1962(c)], the government need not prove a defendant actually committed two racketeering acts, nor that the objectives or purposes of the conspiracy, whatever they may have been, have been achieved or accomplished, nor that the alleged enterprise was actually established, that the defendant was actually employed by or associated with the enterprise, or that the enterprise was actually engaged in, or its activities actually affected, interstate or foreign commerce. The essential nature of Count 2 is the conspiratorial agreement; the ultimate success or failure of the conspiracy is irrelevant.

Id. (emphases added).

Harris complains on appeal that this jury instruction inaccurately stated the law. Harris argues that the elements of a § 1962(d) conspiracy were laid out by this Court in United States v. Smith, 413 F.3d 1253, 1266 (10th Cir. 2005), abrogated on other grounds by United States v. Hutchinson, 573 F.3d. 1011 (10th Cir. 2009), and that Smith's six-part formulation should control. Harris contends that the district court's instructions misled the jury by combining discrete elements from Smith into one element, placing elements out of order, and referring without specificity to the indictment, thus allowing jurors improperly to consider irrelevant portions of the indictment.

We now hold that the existence of an enterprise is not an element of § 1962(d) conspiracy to commit a substantive RICO violation. We hold further that the challenged jury instruction accurately stated the law, and that the district court's general reference to

7

the indictment was not error. Harris's argument on this issue therefore fails the first prong of the plain error test.

In <u>Smith</u>, this Court held that

in order to convict a defendant for violating § 1962(d), the Government must prove beyond a reasonable doubt that the defendant: (1) by knowing about and agreeing to facilitate the commission of two or more acts (2) constituting a pattern (3) of racketeering activity (4) participates in (5) an enterprise (6) the activities of which affect interstate or foreign commerce.

413 F.3d at 1266. Harris argues that, under <u>Smith</u>, "the existence of an enterprise" is an element of conspiracy to commit a RICO violation under § 1962(d) and must be proved. Aplt. Br. at 19. However, the defendant in <u>Smith</u> did not contend that existence of an enterprise was not a necessary <u>element</u> of a § 1962(d) violation. <u>See</u> 413 F.3d at 1267. Instead, the <u>Smith</u> defendant argued only that the <u>evidence</u> against him failed to establish the existence of an enterprise. <u>See id.</u> at 1266-67. Consequently, in <u>Smith</u> this Court focused on what constituted an "enterprise" under RICO, and did not address the alternate possibility that the "existence of an enterprise" might not in fact be a necessary element at all under § 1962(d). Thus, to the extent that <u>Smith</u> stated that the existence of an enterprise was an essential element of § 1962(d), that statement was dicta, i.e., it was "not necessarily involved nor essential to determination of the case in hand." <u>Rohrbaugh v. Celotex Corp.</u>, 53 F.3d 1181, 1184 (10th Cir. 1995) (quoting <u>Black's Law Dictionary</u> 454 (6th ed. 1990)); <u>see</u> <u>United States v. Smith</u>, 454 F. App'x 686, 694 (10th Cir. 2012)

8

(unpublished) (observing that Smith's "holding" that the existence of an enterprise was an element of § 1962(d) conspiracy was dicta).[5]

Now, confronted squarely with the question, and guided by the Supreme Court's decision in Salinas v. United States, 522 U.S. 52 (1997), and the Second Circuit's decision in United States v. Applins, 637 F.3d 59 (2d Cir. 2011), we conclude that § 1962(d) does not require the Government to establish that an enterprise existed.

In Salinas, as here, the defendant was charged both with committing a substantive RICO violation under § 1962(c) and with conspiracy to commit that violation under § 1962(d). See 522 U.S. at 55. Also, as here, the defendant in Salinas was acquitted of the substantive § 1962(c) charge but convicted of the conspiracy § 1962(d) charge. See id. Salinas argued that his § 1962(d) conviction could not stand because the jury was not instructed that it must find that Salinas had personally committed or agreed to commit the two predicate acts required to establish a "pattern of racketeering activity" under § 1962(c). See id. at 61.

The Supreme Court rejected that argument, focusing on the textual differences between § 1962(c) and § 1962(d), and on the general differences between conspiracy and

---

[5] This Court's recent order and judgment in United States v. Smith, 454 F. App'x 686, addressed the precise issue before us. The panel in Smith, also reviewing for plain error, declined to decide whether the existence of an enterprise is an essential element of § 1962(d). See id. at 695-97. But its analysis of the question was thorough and well-reasoned. We adopt that analysis and now extend it one step further, to hold, in a published opinion, that the existence of an enterprise is not an essential element of a § 1962(d) conspiracy.

completed crimes.  As to the textual differences in the statute, Salinas observed that whereas § 1962(c) makes it a crime to "conduct or participate . . . in the conduct of" a RICO enterprise's affairs through a pattern of racketeering activity, § 1962(d) simply makes it criminal "to conspire" to do so.  See id. at 62-63; see also Applins, 637 F.3d at 73-74 (discussing Salinas).  Salinas emphasized that conspiracy is distinct from the completed crime, and "a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself."  522 U.S. at 65.  Further, § 1962(d) requires no overt act, unlike the general criminal conspiracy statute, 18 U.S.C. § 371, which does.  See id. at 63 ("There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.' The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371." (citation omitted)).

In light of these differences, the Salinas Court concluded that to prove a violation of § 1962(d), "it suffices that [a defendant] adopt the goal of furthering or facilitating the criminal endeavor," so long as that endeavor would, "if completed, . . . satisfy all the elements of a substantive criminal offense."  Id. at 65 (emphasis added).  Rejecting the defendant's argument that § 1962(d) required proof that the defendant personally committed or agreed to commit the predicate acts, the Supreme Court observed

10

It makes no difference that the substantive offense under § 1962(c) requires [that someone actually commit] two or more predicate acts. The interplay between subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense.

Id. at 65.

Salinas did not present the precise question presented here. But its discussion of the difference between a § 1962(c) violation and a § 1962(d) violation leads us, like the Second Circuit, to conclude that just as the Government need not prove that a defendant personally committed or agreed to commit the requisite predicate acts to be guilty of § 1962(d) conspiracy, neither must the Government prove that the alleged enterprise actually existed. The district court's challenged jury instruction accurately stated the law.[6] There was no error, and Harris's challenge fails the first prong of the plain error test.[7]

---

[6] We also reject Harris's perfunctory argument that Jury Instruction No. 24's unspecific reference to "the indictment" was error because Count Two did not list any specific racketeering acts, and that the jury therefore should not have been permitted to consider the racketeering acts listed under Count One.

We held in United States v. Randall that "a RICO conspiracy charge need not specify the predicate racketeering acts that the defendant agreed would be committed." 661 F.3d 1291, 1298 (10th Cir. 2011). We cited with approval jury instructions that expressly noted

the indictment need not specify the predicate acts that the defendant agreed would be committed by some member of the conspiracy in the conduct of the affairs of the enterprise. You may consider the evidence presented of racketeering acts committed or agreed to be committed by any co-conspirator in furtherance of the enterprise's affairs to determine whether

Continued . . .

11

**B.    Sufficiency of the evidence**

The second issue is whether the evidence was sufficient to convict Harris of RICO

conspiracy under § 1962(d).  We hold that it was.

Sufficiency of the evidence to support a jury's verdict is a legal issue that we

review de novo.  See United States v. Lewis, 240 F.3d 866, 870 (10th Cir. 2001).  On

appeal, we ask "whether taking the evidence—both direct and circumstantial, together

with the reasonable inferences to be drawn therefrom—in the light most favorable to the

government, a reasonable jury could find the defendant guilty beyond a reasonable

doubt."  United States v. Jameson, 478 F.3d 1204, 1208 (10th Cir. 2007) (internal

quotation marks omitted).

---

Cont.

> the defendant agreed that at least one member of the conspiracy would
> commit two or more racketeering acts.

Id. at 1298 n.3 (emphasis added) (quoting Applins, 637 F.3d at 80).  An almost identical
instruction was given in this case.  Thus, under Randall, the jury could permissibly
consider not only the listed racketeering acts but any other racketeering act upon which it
heard competent evidence.

[7] Even if there were error, such error would not have been plain, as the error was not
"contrary to well-settled law."  United States v. Poe, 556 F.3d 1113, 1129 (10th Cir.
2009) (internal quotation marks omitted).  As discussed, this Court's decision in Smith,
413 F.3d 1253, did not "directly address[] the . . . issue he raises," Poe, 556 F.3d at 1129,
and Harris identifies no Supreme Court precedent that directly addresses it either.  Nor
would the error have affected Harris's substantial rights, in light of the fact that, as we
discuss next, the Government proved the existence of an association-in-fact enterprise,
and Harris shows no "reasonable probability that, but for the error claimed, the result of
the proceeding would have been different."  Fields, 516 F.3d at 944 (internal quotation
marks omitted)

12

> The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts. However, we may not uphold a conviction obtained by piling inference upon inference. The evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt."

United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999) (alterations, citation, internal quotation marks omitted).

Harris contends that the indictment, which referred only to a single enterprise, "the Crips," was insufficient to convict him of § 1962(d) conspiracy because he alleges the evidence adduced at trial did not show a single "enterprise" called "the Crips" but rather showed three separate "enterprises," namely, the Deuce Trey Crips, the Insane Crips, and the Tre Five Seven Crips. Harris points to unrefuted expert testimony that there is no unitary "Crips" organization; there are only "sets." Harris argues that these sets were too loosely affiliated to be considered an "enterprise" within the meaning of RICO, and since "enterprise" is an element of conspiracy under Smith, 413 F.3d 1253, there can be no conspiracy.

Harris's argument fails. We have already rejected the argument that the Government must prove the existence of an enterprise to sustain a conviction under § 1962(d). But even if such proof were required, under controlling Tenth Circuit and Supreme Court case law, the evidence in this case was sufficient to show that these three Crips "sets" together constituted an "association-in-fact enterprise."

RICO provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or

13

foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."  18 U.S.C. § 1962(c). An "enterprise," in turn, "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals <u>associated in fact</u> although not a legal entity."  <u>Id.</u> § 1961(4) (emphasis added).

In <u>United States v. Turkette</u>, the Supreme Court elaborated on the requirements of an "enterprise" and cautioned that "enterprise" and "pattern of racketeering activity" were distinct elements of a substantive RICO violation.  <u>See</u> 452 U.S. 576, 583 (1981)

> In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity."  The enterprise is an <u>entity</u>, . . . a group of persons associated together for a common purpose of engaging in a course of conduct.  The pattern of racketeering activity is, on the other hand, a <u>series of criminal acts</u> as defined by the statute.

<u>Id.</u> (emphases added).  At the same time, though, the Court observed that "the proof used to establish these separate elements may in particular cases coalesce."  <u>See</u> <u>id.</u>

In <u>Smith</u>, this Court considered the question of how much structure an association-in-fact "enterprise" must have to distinguish it from a "pattern of racketeering activity." <u>See</u> 413 F.3d at 1266-68.  We held that the government must prove (1) the existence of an ongoing organization with a decision-making framework or mechanism for controlling the group; (2) that various associates function as a continuing unit; and (3) that the enterprise exists separate and apart from the pattern of racketeering activity.  <u>See</u> <u>id.</u> at 1266-67.

14

Four years later, in Boyle v. United States, the Supreme Court rejected Smith's narrow construction of what constitutes an association-in-fact enterprise. See 129 S. Ct. 2237, 2244-45 (2009). Boyle held that an association-in-fact enterprise could be established solely by showing that there was "[a] purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 2244. The existence of such an enterprise, the Supreme Court held, could in some cases be inferred from the very same evidence that showed the pattern of racketeering activity. Id. at 2245. Further, Boyle held that "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." Id.

> Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods—by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. . . . Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statutes reach.

Id. at 2245-46.

After Boyle, this Court revisited the question of what is necessary to establish an association-in-fact enterprise in United States v. Hutchinson, 573 F.3d 1011 (10th Cir. 2009). Hutchinson acknowledged Boyle's abrogation of Smith and its stricter reading of the technical requirements of RICO, see id. at 1021-22, and recognized that "Boyle's test

15

now governs the disposition of this and future RICO cases in our circuit," id. at 1022. Under Boyle and Hutchinson, then, if the Government established that the various Crips sets shared "[a] purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose," Boyle, 129 S. Ct. at 2244, then the Government would have proved the existence of an "enterprise" within the meaning of 18 U.S.C. § 1962(d).

We hold that the evidence in this case established that the different Crips sets in Wichita meet the test for an association-in-fact enterprise. As to "purpose," the evidence at trial showed that Harris and Knight, members of different sets, jointly operated the houses from which various set members sold drugs, and that they provided drugs for those lower in the chain to sell. There was also testimony that the different Crips sets would work together by "making money, having meetings, things of that nature," including committing robbery, selling drugs, and prostitution. ROA v.3 at 1818-19 (testimony of Trena Ridge). As to "relationships," the record demonstrates that the members of the different sets saw and interacted with one another regularly, through mandatory Crip meetings, the sharing of colors and handshakes, and socializing at the "Crip club," Harry and Ollie's. As to "longevity," the record showed that the pattern of activity that the government alleged continued over a period of years.

Because evidence sufficient to establish the existence of an enterprise (1) did not have to be shown at all for a § 1962(d) conspiracy, and (2) in the alternative, was shown under the Boyle and Hutchinson approach to establishing an "association-in-fact

16

enterprise," we conclude that the evidence was sufficient to convict Harris of conspiracy under 18 U.S.C. § 1962(d).

## C.      Withdrawal from conspiracy

The third issue is whether Harris was entitled to have the jury instructed on the affirmative defense of withdrawal in connection with the charge of conspiracy to commit a RICO violation. We conclude that he was not.

We review the district court's refusal to issue a requested theory-of-defense instruction for an abuse of discretion. See United States v. Turner, 553 F.3d 1337, 1347 (10th Cir. 2009). "'[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor.'" United States v. Randall, 661 F.3d 1291, 1295-96 (10th Cir. 2011) (quoting Mathews v. United States, 485 U.S. 58, 63 (1988)); see United States v. Visinaiz, 428 F.3d 1300, 1308 (10th Cir. 2005) ("Criminal defendants are entitled to jury instructions upon their theory of defense provided there is evidentiary and legal support."). "For the purposes of determining the sufficiency of the evidence to raise the jury issue, the testimony most favorable to the defendant should be accepted." United States v. Al-Rekabi, 454 F.3d 1113, 1121 (10th Cir. 2006) (internal quotation marks omitted). "[I]t is essential that the testimony given or proffered meet a minimum standard as to each element of the defense so that, if a jury finds it to be true, it would support an affirmative defense . . . ." United States v. Bailey, 444 U.S. 394, 415 (1980).

17

Each member of a conspiracy, while the conspiracy exists, is liable for the reasonably foreseeable crimes of his co-conspirators. See Pinkerton v. United States, 328 U.S. 640, 646-47 (1946); United States v. Russell, 963 F.2d 1320, 1322 (10th Cir. 1992). A conspirator can be held liable for those acts of co-conspirators undertaken "until the conspiracy accomplishes its goals or that conspirator withdraws." United States v. Brewer, 983 F.2d 181, 185 (10th Cir. 1993) (citing Hyde v. United States, 225 U.S. 347, 369 (1912)). But simply ceasing participation in the conspiracy does not constitute "withdrawal." United States v. Hughes, 191 F.3d 1317, 1321 (10th Cir. 1999). And it is the defendant's burden to establish withdrawal. See United States v. Powell, 982 F.2d 1422, 1435 (10th Cir. 1992).

"[T]o withdraw from a conspiracy[,] an individual must take affirmative action, either by reporting to the authorities or communicating his intentions to his coconspirators." Id. In Randall, this Court recently held that Powell's reporting-or-communicating test for withdrawal from a conspiracy applies in the context of withdrawing from a conspiracy involving a gang. See 661 F.3d at 1294. In Randall we adopted, see id. at 1294-95, the reasoning of the Eleventh Circuit in United States v. Starrett, which held that even where a gang member had added an "out date" to his gang tattoo, sold his motorcycle, joined a church, got a job, moved away, and cut off virtually all contact with other gang members, the jury was nevertheless entitled to find that he had not sufficiently withdrawn from the gang-related conspiracy, using a "reporting or

18

communicating" test similar to <u>Powell</u>'s. <u>See</u> <u>Starrett</u>, 55 F.3d 1525, 1550-51 (11th Cir. 1995).

In <u>Randall</u> we held that the defendant's statement to a Department of Corrections official that he was no longer part of a gang was insufficient to meet the "reporting" option for withdrawal. <u>See</u> 661 F.3d at 1295. We also held that "maturing out" of the gang, alone, does not meet the "communicating" option. <u>Id.</u> <u>Randall</u> requires that a gang member who seeks to establish that he withdrew from a gang-related conspiracy must

> communicate his withdrawal directly to his coconspirators in a manner that reasonably and effectively notifies the conspirators that he will no longer be included in the conspiracy, <u>in this case the gang</u>,[8] in any way. Communicating such an intent to coconspirators, however, requires more than implied dissociation. It must be sufficiently clear and delivered to those with authority in the conspiracy such that a jury could conclude that it was reasonably calculated to make the dissociation known to the organization. Simply not spending time with coconspirators is not enough to satisfy this standard.

---

[8] We pause to clarify this language in <u>Randall</u>. Randall and Harris were co-defendants in the trial below, charged in the same indictment. That indictment equated the Crips gang with an "'enterprise' as defined by [18 U.S.C. § 1961(4)] . . . , that is, a group of individuals associated in fact." ROA v. 1 at 64 (Fifth Superseding Indictment at ¶ 6). Despite the language in <u>Randall</u>, however, we do not mean to suggest that the RICO conspiracy in this case was necessarily coterminous with the overall Crip organization or any one Crip set. Rather, the conspiracy involved participation in the affairs of a criminal enterprise (the Crips), and other language in <u>Randall</u> confirms that the conspiracy involved certain gang activities, as opposed to membership in the gang. <u>See</u> 661 F.3d at 1295 ("The record does not even reveal that Randall told the [authorities] what gang he was in or <u>what, if any, illegal activity the gang was involved in</u> . . . ." (emphasis added)); <u>id.</u> ("[T]here is no evidence that Randall conveyed to the Crips organization that he would no longer be any part of the gang <u>or of the gang's activities</u>." (emphasis added)). Clearly, as we discuss further, <u>infra</u>, one could be a member of the Crips gang but not guilty of the § 1962(d) conspiracy in this case, and vice-versa.

19

Id. (emphasis added).

Harris bases his withdrawal defense on the following evidence: Harris had become a Muslim and rejected the gang lifestyle as antithetical to his faith; Harris cooperated with police after a 2007 search of his house and told a police detective that he used to be a member of the Insane Crips, but that he had left the organization in the early 1990s; Mary Dean, the girlfriend of a leader of the Insane Crips, testified that Harris was "always clean and wasn't doing everything everybody else was doing," ROA v.3 at 702; Harris was an infrequent visitor to the Crip bar, Harry and Ollie's; Harris was not seen at the park for the required Crip meetings; and he was "[a]t best . . . seen on a couple of occasions at houses where drugs were later found." Aplt. Br. at 26-28.

Like the defendant in Randall, Harris argues that withdrawal from a gang "is not done so much by words as by actions." Aplt. Br. at 28. But also like the defendants in Randall and Starrett, Harris fails to establish that he either reported to law enforcement about the conspiracy with particularity or adequately communicated his withdrawal to his co-conspirators. First, Harris's mentioning to a Wichita Police detective, after his house was searched, that he used to be in the Insane Crips but got out in the 1990s does not qualify as "giv[ing] authorities information with sufficient particularity to enable the authorities to take some action to end the conspiracy." Randall, 661 F.3d at 1294-95. Although the detective was undoubtedly the type of "official who has some ability to act on the information given in an attempt to end the conspiracy," id. at 1295, there was no particularity to Harris's statement that might have enabled authorities to end the

20

conspiracy. Second, Harris presented no evidence that he communicated his withdrawal to anyone in the Crips organization "unambiguous[ly] and effective[ly]." Id. at 1295.

Indeed, evidence adduced at trial suggested that even if Harris no longer considered himself a member of the Insane Crips, and even if other Crips believed Harris was no longer an Insane Crip, Harris nevertheless remained associated with other Crips and, critically to this charge, remained a part of the conspiracy to sell drugs. The substantive RICO provision Harris was charged with conspiring to violate criminalizes certain acts by persons who are simply "employed by or associated with any enterprise." 18 U.S.C. § 1962(c). By its plain terms, the statute does not require formal membership in the enterprise. And, in this case, at least, membership in the gang is not legally equivalent to participation in the conspiracy. See supra n.8. To the extent the indictment equated the Crips gang with anything, it alleged only that the Crips constituted the "enterprise." But even an acknowledged and self-professed Crip would not be guilty of participating in this alleged § 1962(d) conspiracy unless he deliberately joined that conspiracy with knowledge of its purpose, and unless that purpose involved someone committing at least two predicate racketeering acts. Likewise, a person could be guilty of the § 1962(d) conspiracy in this case without being a Crip, so long as he or she deliberately joined the conspiracy, knowing that its purpose was to conduct or participate in the affairs of an enterprise, and agreeing that someone would commit the requisite predicate racketeering acts. Cf. Salinas, 522 U.S. at 65.

21

Because Harris failed to present sufficient evidence for a reasonable jury to find that he had withdrawn from the alleged conspiracy, even if he had withdrawn from the gang, the district court did not abuse its discretion by refusing to instruct the jury on the affirmative defense of withdrawal.

**D.      Sentence**

On appeal Harris raises five challenges to the 188-month sentence he received for his RICO conspiracy conviction under 18 U.S.C. § 1962(d).  Four of his challenges go to the calculation of his sentence and are procedural in nature, while one challenge is to the substantive reasonableness of the sentence.  See United States v. Haley, 529 F.3d 1308, 1311 (10th Cir. 2008) ("Reasonableness review is comprised of a procedural component and a substantive component.").  In light of Harris's wire fraud conviction and the 188-month concurrent sentence he received for that conviction, neither of which he challenges on appeal, we exercise our discretion under the concurrent-sentence doctrine and decline to review his challenges to his RICO conspiracy sentence.

The concurrent-sentence doctrine, prior to the Supreme Court's decision in Ray v. United States, 481 U.S. 736 (1987) (per curiam), provided generally that where a defendant has been sentenced concurrently on multiple counts and challenges his underlying convictions, but a reviewing court has upheld at least one conviction as valid, the court need not consider the validity of other convictions carrying equal or lesser concurrent sentences.  See Benton v. Maryland, 395 U.S. 784, 789 (1969).  But concern for the adverse collateral consequences that flow from a potentially invalid conviction

22

generally counseled that reviewing courts should consider each challenged conviction notwithstanding the existence of concurrent sentences on other, unchallenged or affirmed convictions. See id. at 790; United States v. Montoya, 676 F.2d 428, 432 (10th Cir. 1982).

In Ray, however, the Supreme Court held that where a defendant is convicted on multiple counts, sentenced concurrently on those counts, and challenges his conviction or convictions, the court must review each challenged conviction notwithstanding the concurrent nature of the sentences, because the imposition of a special assessment per count of conviction renders the sentences not truly "concurrent." Ray, 481 U.S. at 737 ("Since petitioner's liability to pay this total depends on the validity of each of his three convictions, the sentences are not concurrent." (emphasis added)). Thus, Ray effectively abolished the concurrent-sentence doctrine in cases where a defendant challenges one or more of multiple federal convictions, because every such conviction carries its own special assessment. See 18 U.S.C. § 3013.

Ray's holding, however, does not eliminate the applicability of the doctrine in cases where a defendant challenges only the length of his sentence, or where, as here, the defendant challenges his conviction and his sentence, but the court has already upheld the conviction. In such cases, the appellate court may still exercise its discretion under the concurrent-sentence doctrine, see United States v. Brown, 996 F.2d 1049, 1053 (10th Cir. 1993) ("[T]he concurrent sentence doctrine is discretionary rather than jurisdictional . . . ."), to decline to review the length of a concurrent sentence, because the defendant suffers

23

neither prejudice nor collateral consequence as a result of the sentence.  See United States

v. Segien, 114 F.3d 1014, 1021 (10th Cir. 1997) (applying doctrine where defendant

challenged his 36-month sentence on one count, but still had a valid, concurrent, 105-

month sentence on another count) ("Here, even if we reversed the district court, the

conviction would stand, albeit perhaps with a reduced sentence, as would the special

assessment.  Thus, our application of the doctrine causes Mr. Segien no prejudice."),

abrogated on other grounds by United States v. Hathaway, 318 F.3d. 1001, 1006 (10th

Cir. 2003); United States v. Olunloyo, 10 F.3d 578, 581 (8th Cir. 1993) ("To the extent

that Olunloyo's . . . argument may be read as a challenge to the 36-month concurrent

sentence imposed for the [unchallenged conviction], we find that a ruling in Olunloyo's

favor would not reduce the time he is required to serve nor does the imposition of this

sentence prejudice him in any way. . . . We thus apply the concurrent-sentence doctrine

and decline to address any issue concerning the 36-month concurrent sentence.").

Here, we conclude that there is no reason to opine on Harris's challenges to his

RICO sentence.  Even if we were to reverse the district court on these sentence-specific

issues, Harris would still stand convicted of RICO conspiracy and would still have to

serve his 188-month wire fraud sentence.  Because Harris will, accordingly, suffer no

prejudice, we decline to address his challenge to his RICO sentence.  See Segien, 114

F.3d at 1021; Olunloyo, 10 F.3d at 581.[9]


### III.    CONCLUSION

For the foregoing reasons, we AFFIRM Harris's conviction and sentence.

---

[9] Nevertheless, we have considered Harris's procedural and substantive challenges to his RICO sentence and we find no apparent error.