FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 24, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CODY BYRON TEERLINK,

    Defendant - Appellant.

No. 23-4095

_____

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 2:22-CR-00024-TS-1)**
_____

Bretta Pirie, Assistant Federal Public Defender, Office of the Federal Public Defender, Salt Lake City, UT (Scott Keith Wilson, Federal Public Defender, Office of the Federal Public Defender, Salt Lake City, UT, with her on the briefs), for Defendant-Appellant

Joseph Palmer, Assistant United States Attorney, Salt Lake City, UT (Trina A. Higgins, United States Attorney, District of Utah, with him on the briefs), for Plaintiff-Appellee

_____

Before **TYMKOVICH**, **EBEL**, and **EID**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

Cody Byron Teerlink was tried and convicted for making a false statement during acquisition of a firearm. On appeal, he asks us to vacate his conviction based on an alleged error in the jury instructions' definition of "proof beyond a reasonable

doubt." The government urges affirmance, arguing the invited-error doctrine bars Teerlink's claim because the parties jointly proposed the instruction Teerlink now seeks to challenge.

We agree with the government that Teerlink invited any alleged error and therefore decline to address the merits of his claim. Our caselaw makes clear that parties cannot craft jury instructions, propose them to the court, and then change course on appeal and argue plain error in those instructions. We also reject Teerlink's novel contention that his footnote to the jury instructions—which purports to preserve his right to plain-error review of the very instructions he requested— immunizes him from our invited-error doctrine. As we explain, we cannot allow parties to contract around that doctrine. To conclude otherwise would reverse the roles of litigant and jurist, forcing district courts to engage in a scavenger hunt for errors in a party's desired jury instructions. Accordingly, we affirm the district court.

## I.

In 2016, Cody Byron Teerlink pleaded guilty in Utah state court to driving under the influence of alcohol. Because Teerlink had two previous drunk driving convictions, his conviction was a third-degree felony. The court sentenced Teerlink to time served, a suspended term of zero to five years' imprisonment, and a thirty-six-month term of probation. Teerlink successfully completed probation on July 12, 2018.

Utah law provides a pathway by which those convicted of a felony may have their felony reduced to a misdemeanor. Utah Code § 76-3-402 (the "402 reduction")

2

states that "[u]pon a motion from the prosecuting attorney or the defendant, the court may enter a judgment of conviction for a lower degree of offense than established by statute" if "after the defendant is successfully discharged from probation or parole from the conviction" the court finds "that entering a judgment of conviction for a lower degree of offense is in the interest of justice." Utah Code Ann. § 76-3-402(3). Teerlink was highly successful on probation—it was even terminated early on request of the probation office—and would have been a likely candidate for a 402 reduction, but he did not apply for a reduction and did not receive one.

Before his conviction, Teerlink spent his career building specialized shooting ranges, a job that required regular handling of firearms and ammunition. His work was brought to an abrupt halt when he was banned from possessing firearms as a result of his felony conviction. But five years on, Teerlink felt "ready to go back." R. Vol. III at 271. In March 2021, Teerlink went to a sporting goods store to purchase a rifle. At the store, Teerlink was required to fill out ATF Form 4473, a firearms transaction record. Question 21(c) of the form read: "Have you ever been convicted in any court, including a military court, of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?" Bureau of Alcohol, Tobacco, Firearms and Explosives, *Firearms Transaction Record* (2023).[1] When Teerlink filled out Form 4473, he marked that he had not been convicted of a felony, and

---

[1] We cite to the 2023 version of Form 4473, as the 2021 version is unavailable. The question at issue is now 21(d) in the 2023 edition of Form 4473.

certified that his answers were true, correct, and complete. Form 4473 informs potential purchasers of firearms that persons who make a false oral or written statement on the form are subject to federal criminal penalties. After Teerlink completed Form 4473, an employee of the store processed his background check online via the Utah Bureau of Criminal Investigation ("BCI"). Two forms— Teerlink's and that of another individual also purchasing a firearm in Utah—were submitted precisely at the same moment, causing a glitch in the system. As a result of the glitch, the system erroneously approved Teerlink, and he was able to purchase a rifle.

Two months later, Teerlink attempted to purchase another firearm from the same store, and once again marked that he was not a felon. But this time there was no error in the system, and Teerlink was denied by the online BCI check. A few days later, he attempted to purchase a firearm from a different store. He filled out Form 4473 a third time, marked that he was not a felon, and was again denied. Teerlink called the BCI and asked why he had been denied purchase, given his first successful transaction. The BCI informed Teerlink that he could not legally possess firearms.

On January 26, 2022, a federal grand jury in the District of Utah indicted Teerlink on one count of making a false statement during acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6); one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1); and two counts of making a false statement during the attempted acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6).

4

In preparation for trial, the district court directed the parties to "meet, confer, and agree upon the wording of the substantive instructions for the case to the extent possible," though the court also explained how the parties could submit separate instructions if they did not agree. R. Supp. Vol. II at 18. At the final pre-trial conference, the district judge noted that he "appreciate[d]" that the parties were "work[ing] together to agree on jury instructions." R. Supp. Vol. I at 21. The parties jointly submitted one jury instruction as relevant here, defining "proof beyond a reasonable doubt" as:

> [P]roof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. Proof beyond a reasonable doubt, therefore, is *proof of such a convincing character that you would be willing to rely and act upon it in the most important of your own affairs*. The government is not required to prove guilt beyond all doubt. It must, however, offer proof that excludes any "reasonable doubt" about the defendant's guilt. A reasonable doubt is a doubt based on reason and thoughtful analysis after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If, on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

R. Vol. I at 95 (emphasis added). The proposed instruction cited to the Tenth Circuit's Criminal Pattern Jury Instruction 1.05 (2021).[2] The jury instructions also

---

[2] This citation misrepresents our pattern jury instructions. In 2021, we defined "proof beyond a reasonable doubt" as:

> [P]roof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude

included a footnote on the first page that stated: "These instructions appear to counsel for the Defendant to be legally correct and without error, but the Defendant is not, as a result of jointly proposing these instructions, waiving plain error review of these instructions." R. Vol. I at 63 n.1. The district court adopted the language proffered by Teerlink and the government without alteration.

The trial centered around whether Teerlink knew of his felon status when he applied for and possessed firearms; he argued that he believed that his plea agreement provided for an automatic 402 reduction following successful completion of probation. The jury convicted Teerlink of Count 1—making a false statement during acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6)—and acquitted him of the other three counts. The district court sentenced Teerlink to eight months' imprisonment. Teerlink now appeals.

---

any "reasonable doubt" concerning the defendant's guilt. A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

Tenth Circuit Criminal Pattern Jury Instruction 1.05 (2021). Unlike the parties' submission, our pattern instruction did not—and does not, *see* Tenth Circuit Criminal Pattern Jury Instruction 1.05 (2025)—include the problematic "willing to rely and act" language. To the contrary, it expressly recognizes criticism of similar language. *See* Tenth Circuit Criminal Pattern Jury Instruction 1.05, cmt. (2021) ("The Tenth Circuit has repeatedly criticized instructions which define reasonable doubt in terms of 'substantial doubt' combined with 'an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs.'" (quotation omitted)); Tenth Circuit Criminal Pattern Jury Instruction 1.05, cmt. (2025) (same).

## II.

Teerlink contends that the "willing to rely and act" language in the jury instructions "worked to lower the government's burden of proof" and violated his Fifth Amendment due process rights, which guarantee protection for the accused against conviction except upon proof beyond a reasonable doubt. Aplt. Br. at 21; *see In re Winship*, 397 U.S. 358, 364 (1970). Teerlink correctly notes that the jointly submitted instruction contained language highly criticized by both this Court and the Supreme Court. *See, e.g.*, *Holland v. United States*, 348 U.S. 121, 138 (1954) (explaining that district courts ought to define reasonable doubt as the kind of doubt that would make a person "hesitate to act," rather than "the kind on which [a person] would be willing to act"); *Monk v. Zelez*, 901 F.2d 885, 890 (10th Cir. 1990) ("The 'willingness to act' language identified by Monk has also been repeatedly criticized by this court and others."); Tenth Circuit Criminal Pattern Jury Instruction 1.05, cmt. (2025) (noting criticism of instructions "which define reasonable doubt in terms of 'substantial doubt' combined with 'an abiding conviction of the defendant's guilt such as you would be willing to act upon in the more weighty and important matters relating to your own affairs'" (quotation omitted)). But we decline to reach the merits of his argument. By proposing the jury instruction, Teerlink invited error and may not challenge it on appeal.

## A.

Our invited-error doctrine holds parties to account when they induce error at trial. The doctrine "prevents a party who induces an erroneous ruling from being

7

able to have it set aside on appeal." *United States v. Burson*, 952 F.2d 1196, 1203 (10th Cir. 1991). "[W]aiver bars a defendant from appealing an invited error." *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007). "A waived claim or defense is one that a party has knowingly and intelligently relinquished; a forfeited plea is one that a party has merely failed to preserve." *Wood v. Milyard*, 566 U.S. 463, 470 n.4 (2012). We have determined that when a party proposes a jury instruction, this act constitutes an intentional and knowing relinquishment, and we "will not engage in appellate review when a defendant has waived his right to challenge a jury instruction by affirmatively approving it at trial." *United States v. Cornelius*, 696 F.3d 1307, 1319 (10th Cir. 2012). There is no exception for jointly submitted jury instructions; we treat a joint submission as affirmative approval by both parties. *See United States v. McBride*, 94 F.4th 1036, 1041–42 (10th Cir. 2024) (finding invited error when "[t]he government and McBride submitted joint jury instructions to the trial court" and concluding it was "immaterial" that "the parties did not entirely agree on the instruction at issue").

Teerlink presents two arguments in his attempt to evade invited error. He first contends that his role in proffering the reasonable doubt instruction was too passive to meet our standard for invited error. He next argues that the footnote included on the first page of the jury instructions effectively contracted him out of any waiver. We are unpersuaded.

Throughout both arguments, Teerlink misapprehends this Circuit's threshold for invited error, encouraging us to take on a far more restrictive view of the invited-

8

error doctrine than our precedent dictates. Accordingly, before reaching the specifics of those arguments, we provide a brief overview of our previous applications of the invited-error doctrine in the context of jury instructions.

In *United States v. Sturm*, the district court "provided an instruction highlighting the theory of the defense" upon the request of the defendant, who was charged with possession and receipt of images of child pornography. 673 F.3d 1274, 1281 (10th Cir. 2012). The district court explained to the jury that "the mere act of observing child pornography, without possession or receipt, is not illegal." *Id*. Sturm did not object to the instruction at trial, but contended on appeal that the district court erred because it did not define "receipt." *Id*. We concluded that "Sturm did not object to the theory of defense instruction given at trial, and proffered the challenged instruction himself. His attack on the sufficiency of this instruction is thus barred by the invited-error doctrine[.]" *Id*.

The same year, we relied on *Sturm* when we found that a defendant had not invited error when he failed to object to the district court's proposed jury instructions at the jury instruction conference. *United States v. Harris*, 695 F.3d 1125, 1130 n.4 (10th Cir. 2012). We explained that "[a] defendant's failure to object to a district court's proposed jury instruction . . . is not the same as a defendant who proffers his or her own instruction, persuades the court to adopt it, and then later seeks to attack the sufficiency of that instruction." *Id*. Because Harris's only role in the error was his failure to object, his objection was "forfeited through neglect, not waived through knowing and voluntary relinquishment." *Id*.

9

Once again we found invited error in *United States v. Jereb*, where the defendant forcefully argued in the jury instruction conference for the specific wording of an instruction. 882 F.3d 1325, 1336 (10th Cir. 2018). On appeal, Jereb argued that the district court erred when it failed to give an instruction regarding the elements of the statute under which he was charged. *Id*. at 1338. But the instruction Jereb argued for at trial was fundamentally incompatible with the instruction he later claimed the district court ought to have given. *Id*. at 1341. We determined that because the two were in direct conflict, Jereb's argument fell within the invited-error doctrine, given that "the defendant requested the jury instruction he later challenge[d] on appeal." *Id*.

Most recently, we decided *United States v. McBride*, in which both parties jointly submitted almost all jury instructions. 94 F.4th at 1039–40. On appeal, McBride challenged a jointly submitted instruction. We noted that we "engage in a subjective inquiry, but, of course, our inquiry is not unmoored." *Id*. at 1042 n.7. Adopting the government's argument, we concluded that "McBride herself offered the instruction about which she now complains and is therefore precluded from challenging it under our invited error doctrine."[3] *Id*. at 1041; *see id*. at 1049 (Eid, J., concurring in part and concurring in the judgment) ("I agree with the majority that

---

[3] McBride also argued that her challenge was appropriate under the supervening-decision doctrine, an exception to the invited-error doctrine. *McBride*, 94 F.4th at 1042. We rejected her argument. *Id*. at 1043–44.

McBride invited error by proposing the jury instructions she now challenges on appeal.").

Our caselaw may thus be articulated as follows: When conducting our subjective inquiry of waiver, we may infer from a party's submission of an instruction and subsequent failure to object that the party knowingly and intelligently relinquished future challenges regarding the instruction.

**B.**

This governing standard applies squarely to Teerlink's claims; it is undisputed that he jointly submitted the instruction and failed to object before or during trial. Still, Teerlink insists this case is an exception to the rule. Within Teerlink's first argument—that his role was too passive to constitute invited error—he raises two examples in his defense. He argues that (1) he was coerced into submitting the instruction, and (2) the error was "largely contained in the district court's own stock jury instructions," so the district court would have issued an erroneous instruction anyway. Aplt. Br. at 34. We address each in turn.

Teerlink implies that he was coerced into jointly submitting the reasonable doubt instruction. *See id.* at 29–31. Under his theory, the error in the instruction was not invited because it was forced by the district court. Teerlink points out that the district court "ordered" the parties to "meet, confer, and agree on as many substantive instructions as they can." R. Supp. Vol. II at 18. In his retelling, this placed him "between Scylla and Charybdis," effectively compelling him to propose joint jury

instructions. Aplt. Br. at 31 (cleaned up). This argument lacks merit. The exact wording of the district court's order was as follows:

> If the parties cannot agree upon one complete set of final instructions, they may submit separately those instructions that are not agreed upon. However, it is not enough for the parties to merely agree upon the general instructions and then each submit their own set of substantive instructions. The court expects the parties to meet, confer, and agree upon the wording of the substantive instructions for the case to the extent possible.

R. Supp. Vol. II at 18.

The district court stated that the parties were expected to agree *to the extent possible*, but explicitly caveated that if they did not, they could submit separate instructions. District courts are given significant latitude over case management. *See United States v. Nicholson*, 983 F.2d 983, 988 (10th Cir. 1993) ("District courts generally are afforded great discretion regarding trial procedure applications (including control of the docket and parties), and their decisions are reviewed only for abuse of discretion."). Of course, there are limitations when a district court threatens or coerces parties; a district court may not punish a criminal defendant who chooses to exercise his constitutional rights. *See United States v. Lampley*, 127 F.3d 1231, 1245 (10th Cir. 1997). But Teerlink explicitly states that he does not believe the district court exceeded its bounds. Aplt. Br. at 30 ("The district court in Mr. Teerlink's case enjoyed the inherent authority to press attorneys to submit joint jury instructions."). And he does not cite a single case where a specific jury instruction was found not to be invited error because the district court generally encouraged the parties to submit joint instructions.

12

The district court did not tell Teerlink what *specific* reasonable doubt instruction to submit, nor did it indicate that it would be inappropriate not to agree on such an instruction at all. Rather, the district court's order encouraged the parties to work together and explained what to do if they did not agree. Teerlink opted to submit joint instructions. The district court's encouragement to the parties to agree on joint instructions has no bearing on whether Teerlink encouraged the district court to adopt a specific, allegedly erroneous instruction. Accordingly, the district court's order does not change our invited-error analysis.

Teerlink next argues that "the error of which [he] complain[s] was largely contained in the district court's own stock jury instructions."[4] Aplt. Br. at 34. He contends that the district court would have issued an erroneous instruction regardless of whether the parties submitted their own instructions. We need not reach the merits of Teerlink's argument because the allegation is untrue. Teerlink's appeal centers around the problematic nature of the "willingness to act" formulation.[5] *See id.* at 20.

_____

[4] Teerlink has requested that we take judicial notice of Judge Ted Stewart's stock criminal instructions. *See* Mot. for Judicial Notice. We may take judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The district court's stock criminal instructions can be accessed on the United States District Court for the District of Utah's website at https://www.utd.uscourts.gov/senior-judge-ted-stewart (last visited June 6, 2025) [hereinafter Stock Criminal Jury Instructions, Judge Stewart]. The document is a proper subject for judicial notice. We thus grant Teerlink's motion as to the stock instructions.

[5] Teerlink later attempts to escape the trap inherent in his argument by characterizing the constitutional error as any reasonable doubt instruction that

The district court's stock jury instruction on reasonable doubt does not employ this formulation; rather, it uses the far more accepted "hesitation to act" formulation. *See* Stock Criminal Jury Instructions, Judge Stewart ("A reasonable doubt is the kind of doubt arising, after consideration of all the evidence, that would cause reasonable people to hesitate to act upon it when conducting the more serious and important affairs in their own lives."). The district court's stock instruction does not include the alleged error that is the linchpin of Teerlink's appeal. This, if anything, indicates to us that the parties *did* knowingly induce the district court to adopt the instruction that Teerlink now challenges on appeal.

Teerlink's explanation as to why he is not subject to the invited-error doctrine is underpinned by an erroneous assertion—that he must have actively and vigorously persuaded the district court to take a different course of action than it otherwise would have taken. *See* Aplt. Br. at 34. He invites us to establish a two-pronged subjective inquiry in which we also inquire into the state of mind of the district court. As we have explained, this is not the standard of our Circuit. Teerlink points to the circumstances of the defendants in *Jereb* and *Sturm*, which admittedly differ from his own. *See, e.g.*, *id.* at 36 ("The defendant in *Jereb* fought for the jury instruction the district court ultimately gave, resisting the government's attempts to propose a different standard and ultimately persuading the district court to use his instruction."). But nothing in our holdings indicates that those circumstances—

---

"analogize[s] to personal decision-making," but his legal argument in practice only addresses the "willingness to act" language. Aplt. Br. at 34.

extensive adversarial oral advocacy or submission of an instruction that embodies one's own theory of the defense—are requisite for a finding of invited error. The common denominator among our line of cases is merely that the defendant (1) proposed the instruction, and (2) did not object prior to his appeal. Teerlink did both; his attempt to cast blame on the district court is unpersuasive.

## C.

We do encounter a novel concept with Teerlink's second argument. Here, Teerlink urges us to find that he could not have invited error because his footnote in the jury instructions effectively immunized him from waiver. *See* R. Vol. I at 63 n.1 ("These instructions appear to counsel for the Defendant to be legally correct and without error, but the Defendant is not, as a result of jointly proposing these instructions, waiving plain error review of these instructions."). He argues that the footnote "rests on this Court's well-established distinction between waiver and forfeiture" and "balanced his compliance with the district court's trial order with this Court's settled jurisprudence . . . between error that is conscious and error that is not." Aplt. Br. at 33. In his characterization, the footnote "isn't a direction to the court of appeals about the appropriate standard of review. It is instead a notice to the district court that lawyers are capable of missing arguments" and thus any error is subject to plain-error review, rather than waiver. Reply Br. at 14. We disagree.

As we have explained, courts must hold parties responsible for what they advocate. *See supra* p. 8. Of course, as Teerlink correctly notes, our adversarial system does not demand perfection: The well-established principle of forfeiture

15

accounts for mistakes resulting from "inadvertence or ignorance of a legal issue" at the district court by allowing parties to argue plain error on appeal. *In re Syngenta AG MIR 162 Corn Litig.*, 61 F.4th 1126, 1180 (10th Cir. 2023). Our forfeiture rules do not, however, establish that a party's mistake at the district court automatically entitles him to plain-error review. For example, at trial, a party may concede a claim that he later comes to understand was crucial to his argument. Yet we may still deem the issue waived because the concession was intentional—even if counsel later discovers it was a poor decision. *See United States v. Teague*, 443 F.3d 1310, 1316 (10th Cir. 2006) (rejecting a defendant's challenge to the conditions of his supervised release because he had proposed them through counsel and personally agreed to them at his sentencing).

The same is true here. What matters in this case is that Teerlink's conduct was intentional. Together with the government, he crafted and reviewed a jury instruction that defined "proof beyond a reasonable doubt." That he now regrets what he initially advocated for does not entitle him to plain-error review. *See supra* pp. 11–15.

A footnote cannot change that. To conclude otherwise would force district courts to either assume the burden of discovering errors in a party's advocated-for position or risk reversal. This reverses the roles of litigant and jurist, casting aside the obligations of advocates who appear before the court. Further, adopting Teerlink's theory could abrogate the invited-error doctrine entirely: Parties could submit a jury instruction with a similar footnote, fight vehemently for a certain

16

instruction prior to and during trial, and then make an about-face and argue plain error on appeal. This is an unworkable escape hatch. Litigants may not simply evade a settled rule in this Circuit by asserting that they are not waiving any argument. Permitting Teerlink's footnote to convert waived challenges into forfeited challenges today would likely lead to a standardized practice of similar footnotes on submissions to district courts in the future. We decline to open that door.

**III.**

For the foregoing reasons, we reject Teerlink's novel contention that his footnote to the jury instructions immunizes him from waiver and AFFIRM his conviction based on the invited-error doctrine.