RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0218p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MICHAEL KENNETH RICH (18-2268/2269); CAREY DALE VANDIVER (18-2323/2324); PATRICK MICHAEL MCKEOUN (18-2342); JEFF GARVIN SMITH (18-2364/2365); DAVID RANDY DROZDOWSKI (18-2401); PAUL ANTHONY DARRAH (18-2407/2408); VINCENT JOHN WITORT (18-2410); VICTOR CARLOS CASTANO (19-1028/1029),

*Defendants-Appellants*.

Nos. 18-2268/2269/2323/2324
/2342/2364 2365 2401/2407
/2408/2410/19-1028/1029

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit;
Nos. 2:11-cr-20129 and 2:11-cr-20066—Robert H. Cleland, District Judge.

Argued: April 28, 2021

Decided and Filed: September 13, 2021

Before: SUHRHEINRICH, GRIFFIN, and DONALD, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Robert M. Morgan, Detroit, Michigan, for Appellant Michael Rich. Mark A. Satawa, Southfield, Michigan, for Appellant Carey VanDiver. Sidney Kraizman, Detroit, Michigan, for Appellant Patrick McKeoun. Craig A. Daly, CRAIG A. DALY, P.C., Detroit, Michigan, for Appellant Jeff Smith. Laura E. Davis, Knoxville, Tennessee, for Appellant David Drozdowski. Patricia A. Maceroni, Huntington Woods, Michigan, for Appellant Paul Darrah. Phillip D. Comorski, Detroit, Michigan, for Appellant Vincent Witort. Matthew M. Robinson, ROBINSON & BRANDT, P.S.C., Covington, Kentucky, for Appellant Victor Castano. Sheldon Light, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** Robert M. Morgan, Detroit, Michigan, for Appellant Michael Rich. Mark A. Satawa, Southfield, Michigan, for Appellant Carey VanDiver. Sidney Kraizman, Detroit, Michigan, for Appellant Patrick McKeoun. Craig A. Daly, CRAIG A. DALY, P.C., Detroit,

Michigan, for Appellant Jeff Smith.  Laura E. Davis, Knoxville, Tennessee, for Appellant David Drozdowski.  Patricia A. Maceroni, Huntington Woods, Michigan, for Appellant Paul Darrah. Phillip D. Comorski, Detroit, Michigan, for Appellant Vincent Witort.  Matthew M. Robinson, ROBINSON & BRANDT, P.S.C., Covington, Kentucky, for Appellant Victor Castano.  Sheldon Light, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

GRIFFIN, J., delivered the opinion of the court in which SUHRHEINRICH, J., joined. DONALD, J. (pp. 12–16), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge.

In many respects, we have seen this case before.  When a motorcycle club shifts gears from sharing a fraternal interest in Harley-Davidsons to peddling drugs through violent means, convictions and lengthy sentences under the Racketeer Influenced and Corrupt Organizations Act (RICO) usually follow.  *See, e.g.*, *United States v. Odum*, 878 F.3d 508 (6th Cir. 2017); *United States v. Deitz*, 577 F.3d 672 (6th Cir. 2009); *United States v. Lawson*, 535 F.3d 434 (6th Cir. 2008).  These consolidated criminal appeals are no exception.

The federal government successfully prosecuted multiple members of the "Devils Diciples [sic] Motorcycle Club" (DDMC) for their role in a RICO enterprise that trafficked large quantities of drugs (namely methamphetamine) and engaged in numerous other illegal acts (like violent crimes, illicit gambling, thefts, and obstruction of justice).  The district court imposed sentences that ranged from twenty-eight years to life in prison.  Defendants have raised over seventy issues on appeal, none of which have merit.  We affirm their convictions and sentences.

In this published opinion, we address two issues of first impression for our court:  (1) the district court's use of future-tense language in its RICO conspiracy jury instructions; and (2) its application of a two-level sentencing enhancement for maintaining a drug premises under U.S.S.G. § 2D1.1(b)(12) via § 1B1.3(a)(1)(B)'s relevant-conduct provision.  For the reasons set forth below, we hold that the future-tense RICO conspiracy jury instructions accurately stated the

law.   In addition, we conclude that on these facts, the district court correctly applied the drug-premises enhancement through relevant conduct in *United States v. Castano*.  We address all other issues in the unpublished appendix to this opinion.

I.

The substantive RICO offense, 18 U.S.C. § 1962(c), makes it "unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."   Section 1962(d) also renders it "unlawful for any person to conspire to violate any of the provisions" of § 1962, including § 1962(c).  Defendants' jury-instruction challenge here lies in the interplay between these two provisions.

Specifically, defendants argue that the district court's instructions were legally incorrect because it added future-tense language into each element of the offense, as follows:

> [T]o convict a defendant on the RICO conspiracy offense based on an agreement to violate . . . 1962(c) . . . the Government must prove the following five elements beyond a reasonable doubt:
>
> One, the existence of an enterprise <u>or that an enterprise would exist</u>.
>
> Two, that the enterprise was <u>or would be</u> engaged in, or its activities affected <u>or would affect</u> interstate commerce.
>
> Three, a conspirator was <u>or would be</u> employed by or associated with the enterprise.
>
> Four, a conspirator did <u>or would</u> conduct <u>or would</u> participate in, directly or indirectly, the conduct of the affairs of the enterprise.
>
> And five, a conspirator did <u>or would</u> knowingly participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity as described in the indictment; that is, a conspirator did <u>or would</u> commit at least two acts of racketeering activity.
>
> If you find from your consideration of the evidence that each of these elements has been proven beyond a reasonable doubt as to a particular defendant, then you should find that defendant guilty on Count 1.

(Emphasis added).  Based on these instructions, defendants claim that the jury was erroneously "instructed that none of the elements of a RICO offense ha[d] to exist, at any time" for a

conviction. On de novo review, *United States v. Pritchard*, 964 F.3d 513, 522 (6th Cir. 2020), we disagree.

A.

We begin with *United States v. Salinas*, 522 U.S. 52 (1997). The issue before the Supreme Court in that matter was similar—whether § 1962(d) applied to a defendant who had participated in a bribery scheme but had not agreed to personally commit two of the predicate acts that RICO forbids. *Id*. at 54. In a unanimous decision, the Court rejected the argument that § 1962(d) required a defendant to agree to commit two predicate acts and instead applied well-established principles of conspiracy law to conclude that § 1962(d) was satisfied where "[a] conspirator . . . intend[ed] to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Id.* at 65. Accordingly, while a defendant must "adopt the goal of furthering or facilitating the criminal endeavor," he could do so "in any number of ways short of agreeing to undertake all of the acts necessary for the crime's completion." *Id.* Therefore, even though Salinas did not commit acts of racketeering himself, he "knew about and agreed to facilitate the scheme." *Id.* at 66. This, the Court said, was "sufficient to support a conviction under § 1962(d)." *Id.*

While *Salinas* did not decide the precise issue before us, several circuits have considered similar challenges to the one we address now in light of *Salinas*—namely, whether the government is required to prove the existence of the enterprise, or whether an agreement to create a racketeering enterprise suffices. *See United States v. Harris*, 695 F.3d 1125, 1133 (10th Cir. 2012); *United States v. Applins*, 637 F.3d 59, 73–74 (2d Cir. 2011); *United States v. Fernandez*, 388 F.3d 1199, 1223 n.13 (9th Cir. 2004). The instructions given by the district court here closely track the instructions at issue in *Applins*. *See* 637 F.3d at 72. In that matter, the Second Circuit determined that the jury instructions "properly allowed for conviction upon proof of an agreement to form an enterprise." *Id.*; *see also id.* at 73–75. The Tenth Circuit's decision in *Harris* is in accord:

> [*Salinas*'s] discussion of the difference between a § 1962(c) violation and a
> § 1962(d) violation leads us, like the Second Circuit, to conclude that just as the

Government need not prove that a defendant personally committed or agreed to commit the requisite predicate acts to be guilty of § 1962(d) conspiracy, neither must the Government prove that the alleged enterprise actually existed.

695 F.3d at 1133.

We agree with the logic of our sister circuits. Section 1962(d) is a conspiracy offense, which as *Salinas* reminds us, criminalizes an *agreement* rather than any substantive criminal offense. In other words, an agreement to associate with and participate in a yet-to-be-formed racketeering enterprise that would affect interstate commerce constitutes a completed offense under § 1962(d). This is because an individual can "intend to further an endeavor which, if completed, would satisfy all elements of a [RICO offense]," *Salinas*, 522 U.S. at 65, even if the RICO enterprise is not yet formed. We heed the Supreme Court's instruction today.

The dissent comes to a contrary conclusion. However, it offers no rejoinder to our discussion of *Salinas*, which fuels our analysis. Nor does it offer any response to the well-reasoned decisions of our sister circuits. Further, the primary case it cites, *Boyle v. United States*, dealt not with whether the government must prove the existence of an enterprise to establish a violation of § 1962(d), but instead with the proper *definition* of an enterprise. *See* 556 U.S. 938, 945 (2009) ("[T]he specific question on which we granted certiorari is whether an association-in-fact enterprise must have 'an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engages?'"). Thus, we are puzzled by the dissent's reliance on *Boyle*. It is of no consequence here that the government must prove the existence of an enterprise to gain a conviction under § 1962(c), and we have no quarrel with *Boyle*'s conclusion to that effect. *See id.* at 947 & at n.4.

The dissent is also incorrect that the existence of an enterprise is the only thing separating § 1962(d) from other statutes criminalizing other conspiracies. Our first holding today is that to convict a defendant under § 1962(d), the government may prove an agreement to form an enterprise (rather than an existing enterprise) so long as the agreement, if completed, would satisfy all the elements of § 1962(c). *Boyle* tells us that RICO enterprises have three characteristics. 556 U.S. at 946 ("[A]n association-in-fact enterprise must have at least three

structural features:  a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose.").  No such thing is required by 21 U.S.C. §§ 841, 846.  *See, e.g.*, *United States v. Wheaton*, 517 F.3d 350, 363–64 (6th Cir. 2008) ("The elements of a drug conspiracy are (1) an agreement by two or more persons to violate the drug laws, (2) knowledge and intent to join in the conspiracy, and (3) participation in the conspiracy." (citation omitted)).  And under 18 U.S.C. § 371, "a conspiracy is an inchoate crime that may be completed in the brief period needed for the formation of the agreement and the commission of a single overt act in furtherance of the conspiracy."  *Boyle*, 556 U.S. at 950.  Section 1962(d), by contrast, has "no requirement" of an overt act, and "*is even more comprehensive*" than § 371.  *Salinas*, 522 U.S. at 63 (emphasis added).  Thus, the dissent incorrectly posits that a preexisting enterprise is necessary to separate these conspiracy offenses.  It is not.

Finally, we reject the dissent's assertion that the government "suggeste[d] that it needed to prove that defendants agreed to join an existing conspiracy in its brief[.]"  It did no such thing. The quoted language from the government's brief addresses an *evidentiary* challenge mounted by McKeoun, and not any challenge to the elements of the offense as outlined in the jury instructions.  As discussed in more detail below, we must take care not to conflate evidentiary challenges to the sufficiency of the evidence with legal challenges to the elements of the offense. The dissent makes that mistake.

B.

Next, our holding in *United States v. Tocco*, 200 F.3d 401 (6th Cir. 2000), is not to the contrary, as defendants have suggested.  In that case, we opined that "[p]roof of a charge under § 1962(d) requires proof that the association or enterprise existed and that the named defendants were associated with and agreed to participate in the conduct of its affairs, which affect interstate commerce, through a pattern of racketeering activity."  *Id.* at 424.  Although this statement appears at first glance to support defendants, a crucial distinction exists—there, we were concerned with whether sufficient *evidence* supported the RICO-conspiracy conviction of alleged Detroit mob boss Jack Tocco, and the parties specifically contested whether the

government had proved the existence of an enterprise. *Id.* Thus, we did not contemplate the possibility that the government need only prove an agreement to join in a yet-unformed racketeering enterprise. It therefore does not force us to hold, erroneously, that the district court's jury instructions were incorrect.[1]

We find ourselves in good company in this regard. In both *Applins* and *Harris*, our sister courts considered this same misconception as to the elements of § 1962(d). *Applins* recognized that prior Second Circuit decisions suggested a RICO conspiracy conviction required proof of an existing enterprise. 637 F.3d at 75 n.4. But it determined those cases did not control because the government had "relied on evidence of the actual existence of an enterprise and pattern of racketeering acts to prove the conspiracy," and did not attempt to prove the conspiracy solely by the existence of an agreement to form a racketeering enterprise. *Id.* Likewise in *Harris*, the Tenth Circuit observed that one of its prior decisions suggested that a § 1962 conspiracy required the government to establish the existence of an enterprise. 695 F.3d at 1132. But the *Harris* court stressed that the defendant in the prior case "did not contend that existence of an enterprise was not a necessary *element* of a 1962(d) violation" and had instead argued "only that the *evidence* against him failed to establish the existence of an enterprise." *Id.* Thus, the court explained that its prior decision was "focused on what constituted an 'enterprise' under RICO, and did not address the alternate possibility that the 'existence of an enterprise' might not in fact be a necessary element at all." *Id.* Accordingly, we hold that the district court correctly

---

[1]The same is true of *United States v. Rios*, 830 F.3d 403, 421 (6th Cir. 2016), and *United States v. Nicholson*, 716 F. App'x 400, 405 (6th Cir. 2017). In *Rios*, we explained that gang-tattoo evidence was highly relevant in a RICO conspiracy case because "the government was required to prove both the existence of a racketeering enterprise and each defendant's association with that enterprise." But again, that case revolved around the government's proofs at trial—which were directed at proving the existence of the enterprise—and not any challenge to the jury instructions. In *Nicholson*, we opined that "to sustain [§ 1962(d)] convictions, the government must have shown that each defendant agreed (1) to associate with an enterprise that has activities affecting interstate commerce; (2) to participate in the conduct of the enterprise's affairs; and (3) that either he or another conspirator would engage in a pattern of racketeering activity." 716 F. App'x at 405. Our discussion likewise came in the context of the sufficiency of the evidence; defendants "claim[ed] that the government failed to show at trial that [their motorcycle club] is a [RICO] enterprise." *Id.* Thus, the dispute was whether the club had "the required purpose, relationships, and longevity to qualify as an enterprise," and we did not consider whether a predicate agreement to create such an enterprise would suffice. *Id.*

instructed the jury to convict each defendant if it found that he joined an agreement that encompassed a future violation of the substantive RICO offense.

II.

We also address whether a district court may apply a sentence enhancement for maintaining "a premises for the purpose of manufacturing or distributing a controlled substance" under U.S.S.G. § 2D1.1(b)(12) through the relevant conduct principles set forth in U.S.S.G. § 1B1.3(a)(1)(B). Here, it is undisputed that defendant Victor Castano did not personally maintain a premises for manufacturing or distributing a controlled substance, but the district court nonetheless applied a two-level enhancement under § 2D1.1(b)(12) based on his co-conspirators' conduct. As he did below, Castano contends that application of this enhancement constituted an improper calculation of his Guidelines range. Because our review of this procedural-reasonableness challenge only involves interpreting the Guidelines and applying them to uncontested facts, our review is de novo. *United States v. Paauwe*, 968 F.3d 614, 617 (6th Cir. 2020).

Section 1B1.3(a)(1)(B) of the Guidelines provides for, in limited circumstances, sentence enhancements based on the conduct of co-conspirators. "Unless otherwise specified," it states, the "specific offense characteristics . . . in Chapter Two . . . shall be determined on the basis of . . . all acts or omissions of others that were—(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity[.]" Focusing on the introductory exception, Castano contends that, because § 2D1.1(b)(12) says that the enhancement applies if "the defendant" maintains a premises, the Guidelines have "otherwise specified" that it cannot apply through jointly undertaken criminal activity under § 1B1.3(a)(1)(B). Caselaw from our circuit and the Eleventh Circuit takes the contrary view, with which we agree.

In *United States v. Holmes*, the Eleventh Circuit addressed this question and concluded that "[n]othing in § 2D1.1(b)(12) prohibits a sentencing court from imposing the premises enhancement based on the jointly undertaken criminal activity of co-conspirators." 767 F. App'x

831, 839 (11th Cir. 2019).  In so holding, *Holmes* differentiated among similar enhancements where the Sentencing Commission had expressly made clear it was carving out the exception Castano now desires.  So, for example, it noted its prior holding in *United States v. Cook*, 181 F.3d 1232 (11th Cir. 1999), that § 3C1.2's enhancement for recklessly creating "a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer" could not be applied based on a co-conspirator's conduct because that enhancement's application note states, "[u]nder this section, the defendant is accountable for his own conduct and for conduct that he aided or abetted, counseled, commanded, induced, procured, or willfully caused."  *Id.* at 1234 (quoting U.S.S.G. § 3C1.2 cmt. n.5).  *Holmes* then contrasted *Cook* with *United States v. McClain*, 252 F.3d 1279, 1288 (11th Cir. 2001), which found relevant-conduct principles applicable to § 3B1.4's enhancement for "if the defendant" uses or attempts to use a minor to avoid detection or apprehension.  Drawing a logical distinction then, the *Holmes* court reasoned that enhancements directed at "the defendant" can be applied via jointly undertaken criminal activity unless the Sentencing Commission "otherwise specified" that it should not—for instance, in an application note.  767 F. App'x at 840.

This comports with our unpublished caselaw.  In *United States v. Patton*, 9 F.3d 110, 1993 WL 432838 (6th Cir. Oct. 26, 1993) (unpublished table op.), we similarly considered whether § 3C1.2 could be applied to co-conspirators who did not personally cause the substantial risk of harm to another.  *Id.* at *1 (quoting U.S.S.G. § 3C1.2).  There, we held that the conduct of a get-away driver could be "imputed" to the other defendants participating in a bank robbery because it was reasonably foreseeable that the driver "would want to leave the scene quickly" after the criminal activity was complete.  *Id.* at *2.  Implicit in this conclusion was an assumption that the enhancement's phrasing—"the defendant"—did not otherwise specify that the relevant conduct provision was inapplicable.

We used the same logic more recently in *United States v. Fritts* to affirm the application of a sentence enhancement for possessing a firearm in connection with another felony offense under § 2K2.1(b)(6)—even though it was the defendant's co-conspirator who had traded oxycodone pills for a shotgun to trigger the enhancement.  557 F. App'x 476, 486 (6th Cir.

2014). We explained that, "[b]ecause Fritts's coconspirator brother obtained the shotgun in exchange for drugs as part of the conspiracy," Fritts could be "responsible for the transaction" under § 1B1.3(a)(1)(B). *Id.* at 487. We were apparently unconcerned that the text of the enhancement reads "If *the defendant* . . . used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels." § 2K2.1(b)(6)(B) (emphasis added). Thus, our caselaw, like the Eleventh Circuit's, suggests that sentence enhancements that are structured as conduct by "the defendant" may be applied to co-conspirators of jointly undertaken criminal activity under § 1B1.3(a)(1)(B).

Pushing back on this conclusion, Castano urges us to instead follow *United States v. Miller*, 698 F.3d 699, 706 (8th Cir. 2012). There, the Eighth Circuit "assumed"—but did not decide—that § 2D1.1(b)(12) "requires proof that the specific defendant being sentenced maintained the premises for the purpose of drug manufacture or distribution." But there was no dispute that the defendant maintained the premises; the issue on appeal was whether she maintained the premises "for the purpose of" drug manufacture or distribution. Thus, the language defendant relies on from *Miller* is dicta, and it does not aid us in assessing whether § 2D1.1(b)(12) falls within the general rule for relevant conduct under § 1B1.3(a)(1)(B).

At argument, Castano also directed us to *United States v. Butler*, 207 F.3d 839, 847–48 (6th Cir. 2000), which he said conflicts with the Eleventh Circuit's opinion in *Holmes*. However, we find *Butler* wholly inapplicable. There, the defendant partnered with a minor to commit a bank robbery. The district court applied § 3B1.4 to enhance the defendant's sentence "on the grounds that he had encouraged" the minor to participate in the crime. *Id.* at 842. On appeal, we concluded that the enhancement was improperly applied. *Id.* at 846–849. First, we reminded district courts that they are to "treat the sentencing guidelines 'as if they were a statute' and follow 'the clear, unambiguous language if there is no manifestation of a contrary intent.'" *Id.* at 847 (citation omitted). Based on that directive, we concluded that the district court had interpreted § 3B1.4 too broadly and "creat[ed], in effect a 'strict liability' enhancement" for any defendant who participated in a crime with a minor. *Id.* at 848. Because our opinion does not

mention § 1B1.3(a)(1)(B), it sheds no light on whether it reaches the premises enhancement at issue here.  It therefore cannot conflict with *Holmes*.

In short, we conclude that the only direct authority on the issue is *Holmes*, and we agree with our sister circuit that nothing in § 2D.1(b)(12) "otherwise specifie[s]" that it cannot be applied based on jointly undertaken criminal activity under § 1B1.3(a)(1)(B).  Accordingly, the district court correctly concluded that the premises enhancement could be applied to Castano even though he did not personally maintain a premises for purposes of drug manufacturing or distribution, and we affirm the application of that sentencing enhancement to him.

III.

For these reasons, and those set forth in our unpublished appendix to this opinion, we affirm defendants' convictions and sentences.

_____

## CONCURRING IN PART AND DISSENTING IN PART

_____

BERNICE BOUIE DONALD, Circuit Judge, concurring in part and dissenting in part.

The majority holds that the government is not required to prove the existence of an enterprise to establish a conspiracy charge under § 1962(d). Based on this conclusion, the majority finds that the district court did not err in providing jury instructions including future-tense language, which allowed the jury to find the defendants guilty without necessarily establishing the existence of an enterprise. I disagree because the existence of an enterprise is an essential element of a conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). For this reason, I dissent from Part I of the majority published opinion and all portions of the unpublished opinion as they relate to the RICO conspiracy charge (Count 1), including the majority's holding affirming the defendants' convictions and sentences. I join the portions of the Court's published and unpublished opinion addressing all other issues raised by the defendants on appeal.

RICO expressly prohibits certain activities by any person employed by or associated with an enterprise. *See* 18 U.S.C. § 1962(c). An enterprise can include any union or group of individuals associated in fact, but not a legal entity. *Boyle v. United States*, 556 U.S. 938, 944 (2009). An associated-in-fact RICO enterprise, such as in this case, must be an ongoing organization, formal or informal, and the organization's various associates must function as a continuing unit. *Id.* The lynchpin of a RICO enterprise is the continuity of its structure and personnel, which links the defendants, and a common or shared purpose. *Id.* at 944-950.

It is well-established that under § 1962(c) the government must demonstrate the existence of an enterprise by "evidence of an ongoing organization, formal or informal," that its "various associates function as a continuing unit" and that it exists "separate and apart" from the "pattern of activity in which it engages." *Id.* The "enterprise" within the meaning of RICO must exist for the substantive offense to apply to the defendant. *Id.*

Our Court has never addressed the precise issue before us today—whether a jury can convict a defendant of a RICO conspiracy merely by establishing that he joined an agreement to abstractly, in the future, form a RICO enterprise. But the Supreme Court's analysis on this topic is instructive.

The Supreme Court clarified that the existence of an enterprise is an element distinct from the pattern of racketeering activity and "proof of one does not necessarily establish the other." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Then, in *Boyle*, the Court again reiterated the requirement to prove the existence of an enterprise: "If the phrase is interpreted to mean that the existence of an enterprise is a separate element that must be proved, it is of course correct." *Boyle*, 556 U.S. at 947. To further expand on this, the Court clarified:

> It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an enterprise. For example, suppose that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates—for example, bribery or extortion. Proof of these patterns would not be enough to show that the individuals were members of an enterprise.

*Id.* n.4. The majority does not doubt that precedent sufficiently establishes that the existence of an enterprise is an element under § 1962(c), but contends that since § 1962(d) is a *conspiracy* to commit a RICO offense, it does not necessarily require the same proof of the existence of an enterprise. I disagree.

Section 1962(d) makes it unlawful to "conspire to violate" RICO's § 1962 statutory subsections (a), (b), or (c). RICO's statute outlines four prohibitions on racketeering activity which can be used to operate or control *an enterprise:* (1)"engag[ing] in, or the activities of which affect, interstate or foreign commerce," 18 U.S.C. § 1962(a); (2) "acquir[ing] or maintain[ing] . . . any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce," § 1962(b); and (3) "conduct[ing] . . . [an] enterprise's affairs through a pattern of racketeering activity," § 1962(c). Lastly, § 1962(d) prohibits conspiring to violate any of the other three prohibitions. It follows, then, that one must conspire to engage in illegal activities while being employed by or associated with an enterprise.

Without the existence of an enterprise, as previously explained in *Boyle*, it would be difficult to distinguish how "several individuals, independently and without coordination," who conspire to manufacture and sell drugs across state lines, for example, would be charged under § 1962(d) instead of under 21 U.S.C. §§ 841, 846 (drug conspiracy). As it happened here, all the defendants were convicted of RICO conspiracy (some, based on their engagement in interstate economic activities to sell drugs), and all defendants except for Rich were also convicted of the drug conspiracy (to manufacture, distribute, and possess with intent to distribute controlled substances). What distinction would there be, in the jury's mind, that would allow it to convict the defendants of both crimes absent the existence of an enterprise? It is therefore logical to conclude that the existence of an enterprise is necessarily tied to the RICO conspiracy offense and must be proven as an element under § 1962(d).

Our caselaw follows the same reasoning. In *Nicholson*, we clarified that, "[t]o be convicted of RICO conspiracy, a defendant must intend to further an endeavor that, if completed, would satisfy all elements of a RICO offense." *United States v. Nicholson*, 716 F. App'x 400, 405 (6th Cir. 2017) (unpublished) (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997)). There, like here, the government needed to sustain convictions under § 1962(c). We outlined that "to sustain these convictions, the government must have shown that each defendant agreed (1) to associate with an enterprise that has activities affecting interstate commerce; (2) to participate in the conduct of the enterprise's affairs; and (3) that either he or another conspirator would engage in a pattern of racketeering activity." *Id.* (citing *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008)). As such, the future-tense language applied only to the participation in the enterprise's affairs or engaging in a pattern of racketeering activities, not to the existence of an enterprise. *Id.*

The majority's reliance on a few sister circuit cases does not convince me that the legislature intended to allow the government to omit proof of a key element—the existence of an enterprise—to prove the RICO conspiracy offense. By the same token, other sister circuits have found that the RICO conspiracy statute requires establishing the existence of an enterprise. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) ("Each of these

subsections [§ 1962(a), (c) and (d),] requires Plaintiffs to have alleged the existence of an 'enterprise'—subsections (a) and (c) require this explicitly, and subsection (d) requires it implicitly by virtue of incorporating the elements of subsection (c)." (internal citation omitted)); *United States v. Starrett*, 55 F.3d 1525, 1543 (11th Cir. 1995) ("The focus is on the agreement to participate in the enterprise through the pattern of racketeering activity, not on the agreement to commit the individual predicate acts."); *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 402 (8th Cir. 2017) ("To establish the charge of conspiracy to violate the RICO statute . . . , [a party] must prove, in addition to elements one, two, and three described immediately above, that the defendant 'objectively manifested an agreement to participate . . . in the affairs of [the] enterprise.'") (quoting *United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995)); *Bachman v. Bear, Stearns & Co., Inc.*, 178 F.3d 930, 932 (7th Cir. 1999) (Where three employees allegedly got together to defraud an employee-shareholder and were indicted under § 1962(d), the Court clarified: "That is a conspiracy, but it is not an enterprise unless every conspiracy is also an enterprise for RICO purposes, which the case law denies." "It is no more an enterprise than if Snyder and Ferrell, while walking together one day, had a sudden impulse to rob a passerby, and did so, and when caught minutes later by a policeman bribed him to let them go.").

By enacting the RICO statute, Congress wanted to create a way to fight "organized crime and its economic roots." *See RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2111 (2016) (Ginsburg, J., dissenting) (quoting *Russello v. United States,* 464 U.S. 16, 26 (1983)). "RICO accordingly proscribes various ways in which an 'enterprise,' might be controlled, operated, or funded by a 'pattern of racketeering activity[.]'" *Id.* (citations omitted). At the heart of any RICO conspiracy offense is the agreement to commit certain racketeering acts while being part of an enterprise. The enterprise, being the operative word, must be in existence at the time co-conspirators agree to engage in the enterprise's affairs or in a pattern of racketeering activity. The government's brief suggests that it needed to prove that defendants agreed to join an existing enterprise in its brief:

> Be that as it may, it was not necessary to prove his direct involvement in those specific acts, or even knowledge of them. *It was sufficient to prove that McKeoun agreed to join the DDMC enterprise* and agreed that a conspirator would commit

two or more acts of the types of racketeering activity alleged. *United States v. Rios*, 830 F.3d 403, 434–35 (6th Cir. 2016). His active role in the DDMC and his meth distribution and manufacturing activity alone were sufficient evidence of his complicity.

Gov't Br., Group 1, 64. While the government is correct that for a conspiracy charge, it does not need to prove specific acts, it needed to show the existence of an enterprise—and it claimed that the DDMC was such an enterprise in its briefs.

However, the jury's instructions read, in part: "[T]o convict a defendant on the RICO conspiracy offense based on an agreement to violate . . . 1962(c) . . . the Government must prove the following five elements beyond a reasonable doubt: One, the existence of an enterprise *or that an enterprise would exist* . . . ." R. 2450, Page ID # 3843738 (emphasis added). This error eliminated the government's burden of proving a key element of the RICO conspiracy offense and allowed the government to convict multiple defendants based on potentially insufficient evidence. It is a grave error that cannot be remedied other than by reversing each of the defendants' convictions and sentences and remanding for a new trial.

For the foregoing reasons, I respectfully dissent.